# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          Case No. 08-CR-189

KENNETH J. LUEDTKE,

        Defendant.

## RECOMMENDATION TO THE HONORABLE LYNN ADELMAN REGARDING THE DEFENDANT'S MOTIONS TO DISMISS

On July 15, 2008, the grand jury returned a two count indictment against Kenneth J. Luedtke ("Luedtke") alleging in count one that Luedtke possessed four firearms and in count two Luedtke possessed ammunition, all while he was subject to a domestic violence injunction and in violation of Title 18, United States Code, Section 922(g)(8) and 924(a)(2). On September 5, 2008, Luedtke filed three motions to dismiss the indictment. (Docket Nos. 11 (Second Amendment), 12 (Insufficiency), 13 (Commerce Clause).) On September 15, 2008, the government responded to these motions, (Docket Nos. 14 re: 13, 15 re: 11, 16 re: 12.) On September 23, 2008, Luedtke submitted a combined reply. (Docket No. 20.) On September 16, 2008, the grand jury returned a superseding indictment. (Docket No. 18.) The charges against Luedtke remain unchanged; the superseding indictment simply includes additional factual allegations. (Docket No. 18.) The pleadings on these motions are closed and the matters are ready for resolution.

A final pretrial conference is scheduled for October 24, 2008 and a jury trial is scheduled to commence on November 3, 2008 before the Honorable Lynn Adelman.

**SECOND AMENDMENT**

On July 14, 2006, a Milwaukee County Circuit Court issued a domestic abuse injunction against Luedtke. (See Milwaukee County Case No. 2006FA004347, available at http://wcca.wicourts.gov.) On February 25, 2008, while this domestic abuse injunction was in effect, Luedtke is alleged to have possessed the firearms and ammunition that form the basis for the indictment. (Docket Nos. 1, 18.)

18 U.S.C. § 922(g)(8) prohibits the possession of a firearm or ammunition that has been transported in interstate commerce by any person

> who is subject to a court order that—
>
> > (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
> >
> > (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
> >
> > (C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
> >
> > > (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

Luedtke argues that this statutory prohibition is unconstitutional in light of the Supreme Court's recent holding in District of Columbia v. Heller, 128 S. Ct. 2783 (2008). (Docket No. 15.)

In its decision in Heller, the Court invalidated the District of Columbia's laws prohibiting individuals from possessing handguns and readily functional firearms in their homes on the basis that the challenged prohibitions violated the Second Amendment. Id. at 2821-22.

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Court held

that this right is a personal right of individuals and is not tied to military service. Heller, 128 S. Ct. at 2797. However, the Court recognized that the right to keep and bear arms, like other constitutional rights, is not without limitation; for example, the government may legitimately impose restrictions upon the persons who may possess firearms, the places those firearms may be possessed, and the types of firearms that may be possessed. Id. at 2799, 2816-17. The court explicitly stated, "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 2816-17. The Court continued in a footnote stating that its list of presumptively lawful regulatory measures were merely examples and was not intended to be exhaustive. Id. at 2817 n.26.

The Court did not explicitly answer the question of what level of scrutiny courts must apply when determining whether a regulation regarding the possession of a firearm comports with the Second Amendment. Justice Breyer, in a dissent joined by Justices Stevens, Souter, and Ginsburg, discussed the question at length. Id. at 2851-54. Justice Breyer stated that a true strict scrutiny standard advocated by Heller would be inappropriate because under it, the firearm regulations the majority explicitly stated it did not intend to call into question, would be rendered suspect. Id. at 2851. In the view of Justice Breyer, the majority implicitly rejected the strict scrutiny standard when it spoke approvingly of restrictions such as a ban on felons or the mentally ill possessing firearms. Id. Therefore, Justice Breyer advocated for explicitly adopting the standard he alleged the majority adopted implicitly, i.e. an interest balancing inquiry where constitutionality is not presumed (as in rational-basis review) nor is unconstitutionality presumed (as in strict scrutiny review), but rather courts must determine "whether the statute burdens a protected interest in a way or to an extent that

is out of proportion to the statute's salutary effect upon the important governmental interests." Id. at 2852.

The majority criticized Justice Breyer's approach, claiming that no other constitutional right has been subject to this approach, and permitting a constitutional guarantee to be subject to such judicial balancing provides no protection at all. Id. at 2821. Justice Breyer responded by asserting that such an interest balancing approach has been repeatedly applied by the Court in a variety of constitutional matters involving issues including free speech and due process. Id. at 2852 (citing cases). Aside from discounting Justice Breyer's approach and approving certain restrictions upon firearm possession, the only substantive guidance the majority offered courts asked to determine the constitutionality of a challenged regulation appears to be the originalist approach ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, . . . ."). Id. at 2821.

In any event, this court finds it unnecessary to select one standard of review over the others because the court finds that §922(g)(8) passes constitutional muster under any of the standards. Therefore, the court shall recommend that the defendant's motion to dismiss the indictment, (Docket No. 11), be denied.

Under the strict scrutiny standard, a law that impinges upon the exercise of a fundamental personal right must be "precisely tailored to serve a compelling governmental interest." Sklar v. Byrne, 727 F.2d 633, 636 (7th Cir. 1984) (quoting Plyler v. Doe, 457 U.S. 202, 216-17 & n.14 (1982)). Recently, Judge Crabb in the Western District of Wisconsin addressed the question of whether §922(g)(9), prohibiting the possession of firearms by persons convicted of the misdemeanor crime of domestic violence, passed this high standard. United States v. Skoien, 2008 U.S. Dist. LEXIS 66105 (W.D. Wis. 2008). Judge Crabb stated that the law was narrowly tailored,

applying only to persons who have been convicted of certain crimes, and served a compelling government interest of "protecting the families of such persons." Id. at 3.

This court has been unable to identify a decision of any court that has addressed the constitutionality of §922(g)(8), the provision under which Ludetke is charged, following Heller. However, before Heller, in a lengthy and comprehensive opinion, the Fifth Circuit addressed the constitutionality of §922(g)(8). United States v. Emerson, 270 F.3d 203 (5th Cir. 2001). The Fifth Circuit, like the Court in Heller, held that the Second Amendment protects a right of individuals, irrespective of any connection to the military. Id. at 260. Nonetheless, the Fifth Circuit held that §922(g)(8) did not infringe upon the defendant's Second Amendment rights. The court stated:

> Although, as we have held, the Second Amendment does protect individual rights, that does not mean that those rights may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country.

Id. at 261. Specifically, the court found that the procedural protections required before a domestic abuse injunction that would prohibit a person from possessing a firearm could be issued, ensured that the restriction was narrowly tailored. Id. at 261-64. Emerson has been followed in other circuits, see, e.g., United States v. Lippman, 369 F.3d 1039 (8th Cir. 2004).

The requirements of §922(g)(8) are narrowly tailored. Only if the relevant domestic abuse injunction was issued after a hearing of which the defendant received actual notice and had the opportunity to participate, may a defendant be convicted under this section. The injunction must include a finding that the defendant "represents a credible threat to the physical safety of such intimate partner or child; or by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury." §922(g)(8)(C). Finally, the injunction must restrain the defendant from "harassing, stalking, or threatening an intimate partner" of the defendant or a child of the intimate

5

partner, "or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child." §922(g)(8)(B).

As can be seen, the section's procedural protections are limited to include only persons who have been judicially determined to pose a danger. Further, these limitations ensure that §922(g)(8) is precisely tailored to serve a compelling governmental interest, i.e. protecting certain victims of domestic abuse. See Lippman, 369 F.3d at 1044.

Luedtke argues that these procedural protections are insufficient to pass constitutional muster. (Docket No. 11 at 4.) For example:

> The person has no right to counsel, to a jury trial, or to proof beyond a reasonable doubt. There is no requirement that the defendant be advised prior to a hearing on the restraining order that he will be stripped of his Second Amendment rights if the restraining order is issued. There is no requirement that the defendant receive notice after an order is issued that he is prohibited from possessing a firearm. There is no requirement that the court's decision to issue a restraining order satisfy any particular burden of proof. There is no limitation on the length of the prohibition so long as the order remains in effect. Also troubling is the fact that domestic violence restraining orders are brought by private individuals who, unlike prosecutors, are not accountable to the public and need not take into account the public's interest or the interest of justice in pursing a restraining order. Further, the restraining order process may itself be used as a method of harassment.

(Docket No. 11 at 4-5.)

Although a respondent to a domestic abuse injunction is not afforded the full panoply of rights provided to a criminal defendant, the court does not find this fact sufficient to render §922(g)(8) constitutionally suspect. Further, many of Luedtke's challenges to §922(g)(8) are general in nature and do not apply to the relevant injunction issued against Luedtke. For example, under Wisconsin law, there is an established burden of proof ("reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner"), Wis. Stat. §813.12(4)(a)3., a limitation for the how long an injunction may be in place (four years), Wis. Stat. §813.12(4)(c), and if the injunction is issued, although there is no requirement that the respondent be informed that federal law prohibits

6

the respondent from possessing a firearm while the injunction is in effect, Wisconsin law does require that the respondent be informed that he is unable to possess a firearm under Wisconsin law, Wis. Stat. §813.12(4m)(a)1; (see also Docket No. 12-2 (copy of relevant domestic abuse injunction explicitly informing the respondent that he is prohibited from possessing a firearm while the injunction is in effect and that possession of a firearm is a Class G Felony under Wisconsin law punishable by up to a $25,000 fine or up to 10 years in prison, or both.)).

Courts of Appeals that have addressed the issue of whether actual notice that federal law prohibits the possession of firearms by a person subject to a domestic abuse injunction before a person may be convicted under §922(g)(8) have uniformly rejected the argument. See, e.g., United States v. Reddick, 203 F.3d 767, 770-71 (10th Cir. 2000) ("We agree with every circuit court that has considered due process challenges to § 922(g)(8) and conclude that due process does not require actual knowledge of the federal statute."); United States v. Napier, 233 F.3d 394, 398-99 (6th Cir. 2000); United States v. Kafka, 222 F.3d 1129, 1131 (9th Cir. 2000); United States v. Meade, 175 F.3d 215, 225-26 (1st Cir. 1999); United States v. Bostic, 168 F.3d 718, 722-23 (4th Cir. 1999); United States v. Wilson, 159 F.3d 280, 288-89 (7th Cir. 1998). Therefore, because §922(g)(8) is narrowly tailored to serve a compelling government interest, it the conclusion of this court that it passes strict scrutiny.

Having concluded that §922(g)(8) passes strict scrutiny, the court has no problem concluding that the statute passes the lesser burden imposed by the interest balancing approach advocated by Justice Breyer.

Turning to the originalist approach referred to by the majority, see Heller, 128 S. Ct. at 2821, based upon the Court's discussion of the understanding of the Second Amendment shortly after its adoption, the court concludes that, although domestic abuse injunctions are a legal device of relatively recent vintage, see 1983 Wis. Act 204, the notion of prohibiting persons determined to be

dangerous by a court from possessing firearms is completely in line with restrictions generally deemed appropriate at the time the Second Amendment was ratified.

As the Heller Court makes clear in its lengthy discussion of historical views of the Second Amendment, the Amendment was not intended to act as an absolute bar to firearms restrictions. For example, it has long been generally understood that, despite the Second Amendment, individuals were not permitted to possess firearms "for an unlawful purpose." See id. at 2806, 2816; see also id. at 2808 (quoting United States v. Sheldon, in 5 Transactions of the Supreme Court of the Territory of Michigan 337, 346 (W. Blume ed. 1940)) ("The constitution of the United States also grants to the citizen the right to keep and bear arms. But the grant of this privilege cannot be construed into the right in him who keeps a gun to destroy his neighbor. No rights are intended to be granted by the constitution for an unlawful or unjustifiable purpose.")

Although those who ratified the Second Amendment clearly intended to prohibit the government from passing certain laws disarming the population as a whole, the history recounted by the Court in Heller demonstrates that the Second Amendment was not intended to prohibit the government from prohibiting certain persons regarded as dangerous from possessing arms. Notably, §922(g)(8) requires an individualized judicial determination of dangerousness, which is likely a higher standard than what persons at the time of ratification considered necessary. Therefore, the court finds no reason to conclude that §922(g)(8) is unconstitutional under this originalist standard.

Finally, the court recognizes there is potentially another approach courts may choose to take when asked to resolve questions of whether a firearm regulation comports with Heller. That is, when presented with a restriction other than those the majority explicitly stated it did not intend to upset with its ruling, see id. at 2816-17, a lower court may attempt to determine whether the challenged regulation is sufficiently analogous to those listed so as to fall within the scope of the Court's footnote 26. See, e.g., United States v. Booker, 2008 U.S. Dist. LEXIS 61464, 5-6 (D. Me.

2008) ("A useful approach is to ask whether a statutory prohibition against the possession of firearms by felons and the mentally ill is similar enough to the statutory prohibition against the possession of firearms by persons convicted of the misdemeanor crime of domestic violence to justify its inclusion in the list of 'longstanding prohibitions' the survive Second Amendment scrutiny.") Although this approach is unlikely to be appropriate for every regulation, when it is appropriate, this may well be regarded as the preferred method due to its relatively easy application in comparison to the alternative approaches discussed above.

The only two classes of persons the Court explicitly presumed may be constitutionally prohibited from possessing firearms are felons and the mentally ill. Id. at 2816-17. Although the Court did not state its rationale for presuming these "longstanding prohibitions" valid, this court finds the common factor underlying each of these classifications is an increased risk of dangerousness. See Dickerson v. New Banner Inst., 460 U.S. 103, 112 n.6 (1983) (citing United States v. Bass, 404 U.S. 336, 345 (1971)) ("Congress' intent in enacting §§ 922(g) and (h) and §1202 was to keep firearms out of the hands of presumptively risky people.")

The court finds that the danger present in permitting a person who is subject to a domestic abuse injunction to possess a firearm is at least as great as the danger posed by permitting felons and the mentally ill to possess firearms. Although certainly not all felons or all persons suffering from mental illness are inherently dangerous, the Court nonetheless appears to have concluded that the risk created by permitting these classes of persons unfettered access to firearms is sufficient to warrant the blanket restrictions. However, unlike a felon or a person "who has been adjudicated as a mental defective or who has been committed to a mental institution," see §922(g)(4), a person who is prohibited from possessing a firearm under §922(g)(8), has been explicitly determined to be dangerous. If a mere propensity for dangerousness based upon membership in a specific class is sufficient, certainly an explicit individualized judicial finding of dangerousness is sufficient.

9

Therefore, it is the conclusion of the court that §922(g)(8) is sufficiently analogous with prohibitions against the possession of firearms by felons or the mentally ill to fall within the other "longstanding prohibitions" anticipated by the Court in footnote 26.

**SUFFICIENCY OF THE INDICTMENT**

Luedtke seeks the dismissal of the indictment on the basis that "the indictment fails to set forth all the elements of the offense and the undisputed facts fail to establish that Mr. Luedtke committed any offense." (Docket No. 12.) Luedtke raises numerous specific challenges to the indictment, which the court shall address individually below.

### Indictment Does Not Contain Every Element of Offense

Luedtke alleges that the indictment should be dismissed because it does not contain each material element of the offense charged. (Docket No. 12 at 3-4.) Although the government responded by arguing that the indictment was sufficient, (Docket No. 16 at 3), nonetheless, while Luedtke's motion was pending, the grand jury returned a superseding indictment wherein Luedtke's complaints are addressed, (Docket No. 18). Luedtke acknowledges in his reply that this subsequent indictment has mooted his motion. (Docket No. 20 at 1.) Therefore, in light of the superseding indictment, the court shall recommend that Luedtke's motion to dismiss on the basis that the indictment did not include every element of the offense be denied as moot.

### Whether the Injunction Was a "Court Order"

Luedtke argues that the domestic abuse injunction issued on July 14, 2006 cannot form the basis for a charge under 18 U.S.C. §922(g)(8) because §922(g)(8) requires that the defendant be subject to a "court order" and the present injunction was signed by a "court commissioner." Luedtke argues that a court commissioner is not a "court" under Wisconsin law. In reply, Luedtke argues that a determination that the injunction constituted a court order would deprive him of due process

because it would be "an unforeseeable and retroactive expansion of narrow and precise statutory language." (Docket No. 20 at 5-6 (quoting Bouie v. Columbia, 378 U.S. 347, 352 (1964)).)

Wisconsin appellate courts have held that court commissioners are not courts within the meaning of Wis. Stat. §808.03(1), regarding the appealability of final orders. See State v. Trongeau, 135 Wis. 2d 188, 400 N.W.2d 12 (Ct. App. 1986). Additionally, when the Wisconsin Court of Appeals was required to resolve the issue of whether court commissioners were authorized by statute to conduct preliminary hearings in felony cases, the court stated:

> A judicial court commissioner, hearing assigned matters, does not constitute a court, and the legislature, having in mind the uninterrupted uniform interpretation of the word, "court," which reaches back in our history for well over a hundred years, could not have intended, without expressly saying so, to include a judicial court commissioner under the general rubric of "court."

State ex rel. Perry v. Wolke, 71 Wis. 2d 100, 106, 237 N.W.2d 678, 681 (1976). Further, the court noted that a "court commissioner" like a "judge" is an individual while a "court" is an institution. Id.

The court finds Luedtke's argument misguided. Although the injunction was signed by a circuit court commissioner as opposed to a circuit court judge (the individuals), a circuit court commissioner may nonetheless preside over a court (the institution) and thus issue court orders. Although an order of a court commissioner might not be considered a final order of a court when determining the appealability of an order under Wis. Stat. §808.03(1), this does not preclude a court commissioner's order from being considered a "court order" as that term is used in the entirely distinct context of §922(g)(8).

Circuit court commissioners are "officers of the court" appointed by the chief judge of a judicial administrative district "to perform limited judicial and quasi-judicial functions under the direction and authority of the chief judge and the judges of the circuit." Wis. SCR 75.02(1). Court commissioners are explicitly authorized by statute to issue domestic violence injunctions. Wis. Stat.

§757.69(1)(m). A domestic abuse injunction, like any order of a circuit court commissioner, is subject to de novo review by a circuit court judge, should any party request such review. Wis. Stat. §757.69(8). Absent a request for review, the court commissioner's order has the force and effect of any other court order.

A court commissioner is an individual who is vested with the authority to perform judicial functions, including issuing domestic violence injunctions. Although the court commissioner's judicial actions are subject to de novo review by a circuit court judge, this court finds no reason to conclude that the court commissioner's actions are somehow not actions of a court. Notably, the injunction is captioned as being filed in Milwaukee County Circuit Court, the findings are preceded by "THE COURT FINDS:," the orders are preceded by "THE COURT ORDERS: and "THE COURT FURTHER ORDERS"," and immediately before the court commissioner's signature is the phrase "BY THE COURT:" (Docket No. 12-2 at 2.) With these repeated references, this court believes that any reasonable person, including the defendant, would consider a court commissioner's order a "court order" as that term is used in §922(g)(8). Thus, the court finds no due process violation. The court commissioner's authority may be regarded as authority delegated from the circuit court, but nonetheless, an action of a court commissioner is an action of a court and therefore constitutes a court order under §922(g)(8). The only unforeseeable retroactive action that exists in this case is the defendant's attempt to create a loophole in an unambiguous injunction and statute.

**"Intimate Partner"**

Luedtke alleges that the domestic abuse injunction issued against him does not satisfy the requirements under §922(g)(8) because it does not include a finding that the petitioner was an "intimate partner" of Luedtke. (Docket No. 12 at 6-7.)

12
Case 2:08-cr-00189-LA   Filed 09/26/08   Page 12 of 15   Document 21

The court finds no merit in Luedtke's argument. Luedtke cites no authority in support of this argument, and based upon a plain reading of §922(g)(8), the statute is clear that there is no requirement that the court issuing the injunction include a finding that the petitioner is the respondent's "intimate partner." Whether or not the respondent was the defendant's intimate partner, in order to sustain a violation of §922(g)(8), is a question of fact for the finder of fact to determine at trial.

**Findings Required by 18 U.S.C. §922(g)(8)(C)**

Luedtke argues that the domestic abuse injunction issued against him fails to satisfy the requirements set forth in §922(g)(8)(C). Section 922(g)(8)(C) requires that the injunction must include a finding that the defendant "represents a credible threat to the physical safety of such intimate partner or child, §922(g)(8)(C)(i), or by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury," §922(g)(8)(C)(ii).

According to the injunction, the court found "there are reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner as defined in §813.12(1)(am), Wisconsin Statutes." (Docket No. 12-2 at 1.) Therefore, the court ordered, in part, that "[t]he respondent refrain from committing acts of domestic abuse against the petitioner." (Docket No. 12-2 at 1.)

Under Wisconsin law, domestic abuse includes much more than physical violence. Domestic abuse is defined by Wis. Stat. §813.12(1)(am) to include:

> 1. Intentional infliction of physical pain, physical injury or illness.
> 2. Intentional impairment of physical condition.
> 3. A violation of s. 940.225 (1), (2) or (3) [(sexual assault)]
> 5. A violation of s. 943.01, [(damage to property)] involving property that belongs to the individual.
> 6. A threat to engage in the conduct under subd. 1., 2., 3., or 5.

13
Case 2:08-cr-00189-LA   Filed 09/26/08   Page 13 of 15   Document 21

Although domestic abuse under Wisconsin law includes more than "the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury," §922(g)(8)(C)(ii), such conduct is, nonetheless, included within the definition of domestic abuse.

However, the court finds it unnecessary to turn to the statutory definition of "domestic abuse" and instead finds that simply ordering the "respondent refrain from committing acts of domestic abuse against the petitioner," (Docket No. 12-2 at 1), is sufficient under §922(g)(8)(C)(ii). The two Circuit Courts of Appeals that this court has identified as having addressed this issue have held that injunctions that order the respondent to merely "refrain from abusing" are sufficient under §922(g)(8)(C)(ii). United States v. Coccia, 446 F.3d 233, 242 (1st Cir. 2006); United States v. Bostic, 168 F.3d 718, 722 (4th Cir. 1999). This court concludes likewise, and therefore, for the reasons set forth above, the court shall recommend that the Luedtke's motion to dismiss, (Docket No. 12), be denied.

**COMMERCE CLAUSE**

Luedtke seeks dismissal of the indictment on the basis that the charges against him do not have a sufficient connection to interstate commerce. (Docket No. 13.) However, Luedtke acknowledges that this argument has been rejected by the Seventh Circuit Court of Appeals, United States v. Wilson, 159 F.3d 280 (7th Cir. 1999) and therefore states he raised this argument simply in an effort to preserve it for later review. (Docket No. 13.)

The Seventh Circuit was unequivocal when it held, "Since § 922(g)(8) requires the government to prove that the firearms at issue have at least a minimal nexus with interstate commerce, the statute was enacted within Congress' power under the Commerce Clause, and we find that it is constitutional." Wilson, 159 F.3d at 287. Therefore, in light of this precedent, the court shall recommend that Luedtke's motion to dismiss, (Docket No. 13), be denied.

**IT IS THEREFORE RECOMMENDED** that Luedtke's motion to dismiss, (Docket No. 11), be **denied**.

**IT IS FURTHER RECOMMENDED** that Luedtke's motion to dismiss, (Docket No. 12), be **denied**.

**IT IS FURTHER RECOMMENDED** that Luedtke's motion to dismiss, (Docket No. 13), be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 26th day of September 2008.

s/AARON E. GOODSTEIN<br>U.S. Magistrate Judge