# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                      **Case No. 08-CR-189**

**KENNETH LUEDTKE**
    **Defendant.**

## DECISION AND ORDER

The government charged defendant Kenneth Luedtke with possessing firearms and ammunition while subject to a domestic violence injunction issued by a Wisconsin court, contrary to 18 U.S.C. § 922(g)(8). Defendant moved to dismiss the indictment, arguing that § 922(g)(8) violates the Second Amendment. The magistrate judge handling pre-trial matters in this case recommended that the motion be denied. Defendant objects, requiring me to consider the motion de novo. Fed. R. Crim. P. 59(b)(3).[1]

**I.**

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, 128 S. Ct. 2783 (2008), the Supreme Court rejected the proposition that the Amendment protects only the right to possess firearms in connection with militia service. Instead, the Court endorsed an individual right to possess certain weapons for self-defense in the home. Id. at 2797. Based

---

[1]Defendant also moved to dismiss on various other grounds, which I address in a separate decision.

on this interpretation of the Amendment, the Court struck down the District of Columbia's virtual ban on the possession of handguns. Id. at 2817-22.

Not surprisingly, defendants have seized upon Heller to mount various challenges to federal prosecutions for firearm possession, thus far without success. See, e.g., United States v. Fincher, 538 F.3d 868, 873-74 (8th Cir. 2008) (rejecting Heller challenge to ban on machine gun possession); United States v. Borgo, No. 1:08CR81, 2008 WL 4631422, at *2 (W.D.N.C. Oct. 17, 2008) (rejecting Heller challenge to § 922(g)(1)); United States v. White, No. 07-00361, 2008 WL 3211298, at *1 (S.D. Ala. Aug. 6, 2008) (collecting cases rejecting various challenges to § 922(g)); United States v. Yancey, No. 08-CR-103, 2008 WL 4534201, at *1 (W.D. Wis. Oct. 3, 2008) (collecting cases); United States v. Whisnant, No. 3:07-CR-32, 2008 WL 4500118, at *1 (E.D. Tenn. Sept. 30, 2008) (collecting cases); United States v. Robinson, No. 07-CR-202, 2008 WL 2937742, at *2 (E.D. Wis. July 23, 2008) (collecting cases). Courts have generally relied upon the following language in Heller suggesting that many federal firearm regulations remain constitutional:

> There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms. Of course the right was not unlimited, just as the First Amendment's right of free speech was not. Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose.
> . . .
> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 2799 & 2816-17 (internal citations omitted).

In the present case, defendant is charged with a violation of § 922(g)(8), which makes

2

unlawful the possession of a firearm or ammunition by one:

> who is subject to a court order that--
>
> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>
> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury[.]

18 U.S.C. § 922(g)(8). Congress enacted § 922(g)(8) – and a companion provision prohibiting possession of firearms by those convicted of misdemeanor crimes of domestic violence, § 922(g)(9) – in 1996 as part of the so-called Lautenberg Amendment to the Gun Control Act. United States v. Carr, 513 F.3d 1164, 1168 (9th Cir.), cert. denied, 129 S. Ct. 54 (2008); United States v. Barnes, 295 F.3d 1354, 1364 (D.C. Cir. 2002); Gillespie v. City of Indianapolis, 185 F.3d 693, 697-98 (7th Cir. 1999). The issue before me is whether § 922(g)(8) constitutes one of those permissible limitations on individual rights under the Second Amendment.

**II.**

It is true that the Lautenberg Amendment does not represent a "longstanding prohibition[] on the possession of firearms," but nothing in Heller suggests that the Court intended to permit only those <u>precise</u> regulations accepted at the founding.[2] Rather, the

---

[2] Indeed, the Court stated that: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." 128 S. Ct. at 2817 n.26.

3

Court's examples are best understood as representing the <u>types</u> of regulations that pass constitutional muster. See <u>United States v. Booker</u>, 570 F. Supp. 2d 161, 163 (D. Me. 2008) ("A useful approach is to ask whether a statutory prohibition against the possession of firearms by felons and the mentally ill is similar enough to the statutory prohibition against the possession of firearms by persons convicted of the misdemeanor crime of domestic violence to justify its inclusion in the list of 'longstanding prohibitions' that survive Second Amendment scrutiny."). Sections 922(g)(8) and (9) are regulations of a type traditionally permitted in this nation.

Laws barring felons and the mentally ill from access to weapons have historically been based on the societal determination that such individuals pose a particular danger. <u>See, e.g.</u>, <u>United States v. Lewis</u>, 249 F.3d 793, 796 (8th Cir. 2001) (citing <u>Barrett v. United States</u>, 423 U.S. 212, 218-21 (1976); <u>Huddleston v. United States</u>, 415 U.S. 814, 824-25 (1974)). Such prohibitions on firearm possession by the potentially dangerous or unstable have deep roots in our history. In the classical republican political philosophy ascendant at the founding, the concept of a right to arms was tied to that of the "virtuous citizen." Consistent with this emphasis on the virtuous citizen was that the right to arms did not preclude laws disarming the "unvirtuous" (i.e., criminals) or those who, like children or the mentally unbalanced, were deemed "incapable of virtue." Thus, felons, children and the insane were excluded from the right to arms. Glenn Harlan Reynolds, <u>A Critical Guide to the Second Amendment</u>, 62 Tenn. L. Rev. 461, 480 (1995) (citing Don B. Kates Jr., <u>The Second Amendment: A Dialogue</u>, 49 Law & Contemp. Probs. 143, 146 (1986)).

The Gun Control Act of 1968 carried on this tradition. As Congressman Celler, the House Manager of the Act, stated:

4

> [W]e are convinced that a strengthened system can significantly contribute to reducing the danger of crime in the United States. No one can dispute the need to prevent drug addicts, mental incompetents, persons with a history of mental disturbances, and persons convicted of certain offenses, from buying, owning, or possessing firearms. This bill seeks to maximize the possibility of keeping firearms out of the hands of such persons.

Lewis, 249 F.3d at 796 (quoting 114 Cong. Rec. 21784 (daily ed. July 17, 1968); see also Barrett, 423 U.S. at 220 ("The history of the 1968 Act reflects a similar concern with keeping firearms out of the hands of categories of potentially irresponsible persons, including convicted felons."); Huddleston, 415 U.S. at 824 ("The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'") (quoting S. Rep. No. 1501, at 22 (1968), as reprinted in 1968 U.S.C.C.A.N. 4410).

Sections 922(g)(8) and (9) serve the same purpose. As Senator Lautenberg explained:

> Under current Federal law, it is illegal for persons convicted of felonies to possess firearms, yet, many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies. At the end of the day, due to outdated laws or thinking, perhaps after a plea bargain, they are, at most, convicted of a misdemeanor. In fact, most of those who commit family violence are never even prosecuted. But when they are, one-third of the cases that would be considered felonies, if committed by strangers, are instead filed as misdemeanors. The fact is that in many places domestic violence is not taken as seriously as other forms of brutal behavior. Often acts of serious spouse abuse are not even considered felonies.
> . . .
> There is no reason for [people] who beat[ ] their wives or abuse[ ] their children to own a gun . . . This amendment would close this dangerous loophole and keep guns away from violent individuals who threaten their own families, people who have shown that they cannot control themselves and are prone to fits of violent rage directed, unbelievable enough, against their own loved ones. The amendment says: Abuse your wife, lose your gun; beat your child, lose your gun; assault your ex-wife, lose your gun; no ifs, ands, or buts.

United States v. Smith, 964 F. Supp. 286, 292-93 (N.D. Iowa 1997) (quoting 142 Cong. Rec. S10377-01 (daily ed. May 16, 1997)), aff'd, 171 F. 3d 617 (8th Cir.1999). Further, Congress

5

possessed significant evidence that firearm violence by this category of persons presented a serious national problem. As the First Circuit stated:

> Observing that "nearly 65 percent of all murder victims known to have been killed by intimates were shot to death," 142 Cong. Rec. S10379 (daily ed. Sept. 12, 1996) (statement of Sen. Murray), Congress hoped that closing this loophole would help to reduce the 150,000 instances of household violence involving firearms that are reported each year. 142 Cong. Rec. S8831 (daily ed. July 25, 1996) (statement of Sen. Lautenberg).

United States v. Hartsock, 347 F.3d 1, 5 (1st Cir. 2003); see also United States v. Booker, 555 F. Supp. 2d 218, 225-26 (D. Me. 2008) (discussing the legislative history and purpose of the Lautenberg Amendment); United States v. Meade, 986 F. Supp. 66, 68 (D. Mass. 1997) (same), aff'd, 175 F. 3d 215 (1st Cir. 1999). Nothing in Heller suggests that Congress may not – based on further experience and study – close such loopholes, adding to the list of dangerous individuals historically barred from firearm possession. I therefore reject defendant's argument that § 922(g)(8) is inconsistent with the historical practices discussed in Heller.

**III.**

Defendant also argues that § 922(g)(8) sweeps too broadly, applying to persons not found imminently dangerous by any court, and that the statute contains insufficient procedural protections. I address each contention in turn.

First, there is no requirement under the Second Amendment that only those persons found imminently likely to engage in gun violence may be dispossessed of their firearms. Indeed, under § 922(g)(1), all felons – save those convicted of "antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices," 18 U.S.C. § 921(a)(20); see also United States v. Jester, 139 F.3d 1168, 1171 (7th

Cir. 1998) (finding it reasonable for Congress to exempt this class of non-violent offenders) – are prohibited from possessing guns, with no requirement of a specific finding of danger. One could argue that by requiring an individualized finding of danger or risk by a court, § 922(g)(8) actually more narrowly serves this salutary purpose than does the general ban on possession by (most) felons. Defendant offers no persuasive argument why the Second Amendment would permit application of a firearm ban to a person convicted of, say, mail fraud, see Dreher v. United States, 115 F.3d 330, 332 (5th Cir. 1997) (holding that mail and wire fraud offenses are not excluded by § 921(a)(20)(A)), but not one who "represents a credible threat to the physical safety of [his] intimate partner or child." 18 U.S.C. § 922(g)(8)(C)(i).

Second, although the procedural protections under § 922(g)(8)(A) do not equal those afforded the criminally accused, defendant provides no authority for the proposition that counsel, a jury trial and/or proof beyond a reasonable doubt are always required before a person may be stripped of a constitutional right.[3] Indeed, even those courts which, pre-Heller, had adopted an "individual rights" interpretation of the Second Amendment rejected challenges to the procedures under § 922(g)(8)(A). United States v. Emerson, 270 F.3d 203, 261-62 (5th Cir. 2001). As the Emerson court stated:

> Section 922(g)(8)(A) requires an actual hearing with prior notice and an

---

[3]Defendant claims that the originalist approach adopted in Heller disapproves of supplanting 21st century policy decisions in place of 18th century practice, and argues that a prohibition on gun possession based on a private action without all of the protections afforded criminal defendants is far removed from any regulation that would have been deemed permissible at the time of the founding. However, he cites no authority in support of this argument, and many of the procedural protections criminal defendants now take for granted did not exist in the 18th century. See, e.g., Gideon v. Wainwright, 372 U.S. 335 (1963). To the extent that defendant argues that the poor in particular are susceptible to arbitrary and unjust orders taking their guns, until 1963 such individuals were subject to greater deprivations without assistance of counsel.

7

> opportunity to participate, and section 922(g)(8)(C)(ii) requires that the order "explicitly" prohibit the use (actual, threatened or attempted) of physical force that would reasonably be expected to cause bodily injury. Congress legislated against the background of the almost universal rule of American law that for a temporary injunction to issue [there must be a likelihood that irreparable harm will occur].

Id. at 261-62; see also United States v. Lippman, 369 F.3d 1039, 1044 (8th Cir. 2004).[4]

The domestic abuse order in the present case issued under Wisconsin law, which sets forth clear procedures for injunction matters, including the burden of proof, Wis. Stat. § 813.12(4)(a)3. ("reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner"); a limitation on the length of an injunction, Wis. Stat. § 813.12(4)(c) (up to four years); and a requirement that the respondent be advised of the applicable penalties under state law for firearm possession while under an injunction, and that he must "surrender any firearms that he or she owns or has in his or her possession to the sheriff of the county in which the action under this section was commenced," Wis. Stat. § 813.12(4m). In Emerson, the court

> conclude[d] that Congress in enacting section 922(g)(8)(C)(ii) proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and hearing, should not embrace the prohibitions of paragraph (C)(ii) unless such either were not contested or evidence credited by the court reflected a real threat or danger of injury to the protected party by the party enjoined. We do not imply that Congress intended to authorize collateral review of the particular state court predicate order in section 922(g)(8)(C)(ii) prosecutions to determine whether in that individual case the state court adequately followed state law in issuing the order. What we do suggest is that Congress did not have in mind orders issued under a legal system whose rules did not approximate the above stated general minimum standards for the issuance of contested injunctive orders after notice and hearing.
>
> In any event, it is clear to us that Texas law meets these general minimum

---

[4]The Seventh Circuit, which did not adhere to the individual rights view, found the statute's procedures sufficient in United States v. Wilson, 159 F.3d 280, 288-89 (7th Cir. 1998).

8

standards.

270 F.3d at 262. So does Wisconsin's law.[5] I therefore reject defendant's argument that § 922(g)(8) is procedurally flawed.

**IV.**

The parties and the magistrate judge discuss the appropriate standard of review under the Second Amendment, with defendant arguing that I must subject the statute to strict scrutiny. It does not appear that the Heller majority endorsed any particular standard. Rather, it engaged in an historical analysis of the types of restrictions permitted by the Second Amendment. Therefore, I believe that the issue is best analyzed in the manner set forth above, i.e. by comparing the challenged regulation to those deemed permissible under the Court's historical analysis.

However, even if I were to apply strict scrutiny, as defendant asks, the statute would survive. As Judge Kahn recently explained:

> Reducing domestic violence is a compelling government interest, see, e.g., United States v. Lippman, 369 F.3d 1039, 1043 (8th Cir. 2004), cert. denied, 543 U.S. 1080 (2005), United States v. Calor, 340 F.3d 428, 432 (6th Cir. 2003), Henderson v. City of Simi Valley, 305 F.3d 1052, 1057 (9th Cir. 2002), and 922(g)(8)'s temporary prohibition, while the state court order is outstanding, is narrowly tailored to that compelling interest. Accord United States v. Emerson, 270 F.3d 203, 262-63 (5th Cir. 2001) (finding that the Second Amendment protects individual rights, but nevertheless upholding § 922(g)(8)). The threatened conduct that is a prerequisite to the prohibition is serious: "harassing, stalking, threatening," or other conduct that would cause "reasonable fear of

---

[5]Defendant argues that Emerson placed too much confidence in Congress and the procedural protections afforded by applicable state law. However, he points to no significant flaws in Wisconsin's procedures. It is worth noting that the injunction at issue in this very case clearly told defendant that he was "prohibited from possessing a firearm until the expiration of this injunction" (R. 12-2 at 1); thus, his argument based on lack of notice rings hollow. I can leave for another day the issue of whether a viable constitutional challenge to § 922(g)(8) may be mounted if the applicable state law fails to provide the fundamentals of due process.

9

> bodily injury"; and the court order must make a specific finding of "a credible threat to the physical safety" of an intimate partner or child or an explicit prohibition on the use of force "that would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8). These are narrowly crafted limits on when a citizen may possess a firearm and well tuned to the legitimate concerns of avoiding serious physical injury to a partner or child.

United States v. Erwin, No. 1:07-CR-556, 2008 WL 4534058, at *2 (N.D.N.Y. Oct. 6, 2008); see also Lippman, 369 F.3d at 1044 ("We also conclude that the restraining order issued against Lippman was narrowly tailored to restrict his firearm possession for a limited duration and to protect the individual applicant and that Congress had a compelling government interest in enacting § 922(g)(8) to decrease domestic violence."). No court has found § 922(g)(8) wanting, even under strict scrutiny.

**V.**

Finally, I note that the Seventh Circuit rejected constitutional challenges to the Lautenberg Amendment prior to Heller, Gillespie, 185 F.3d at 711 (upholding § 922(g)(9)); Wilson, 159 F.3d at 283 (upholding § 922(g)(8)), and district courts must, absent a clear change in the law by the Supreme Court, continue to follow circuit precedent. Heller held only that the federal government may not forbid possession of handguns for self-defense in the home. Given this limited holding, I must adhere to controlling circuit law.

For all of these reasons and those stated by the magistrate judge in his recommendation on the motion, I join the courts which have uniformly upheld the Lautenberg Amendment provisions against Heller challenges. See, e.g., United States v. Lippman, No. 4:02-CR-082, 2008 WL 4661514 (D.N.D. Oct. 20, 2008); United States v. Li, No. 08-CR-212, 2008 WL 4610318 (E.D. Wis. Oct. 15, 2008) (Greisbach, J.); United States v. Chester, No. 2:08-00105, 2008 WL 4534210 (S.D. W. Va. Oct. 7, 2008); United States v. Knight, 574 F. Supp. 2d 224

10

(D. Me. 2008); United States v. Skoien, No. 08-CR-12, 2008 WL 4682598 (W.D. Wis. Aug. 27, 2008); United States v. White, No. 07-00361, 2008 WL 3211298 (S.D. Ala. Aug. 6, 2008).[6]

**VI.**

**THEREFORE, IT IS ORDERED** that defendant's motion to dismiss based on the Second Amendment (R. 11) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 18th day of November, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[6] I also note that every circuit court of appeals considering the issue prior to Heller upheld § 922(g)(8) against Second Amendment challenges. Lippman, 369 F.3d at 1044 (collecting cases); see also United States v. Coccia, 446 F.3d 233, 243 (1st Cir. 2006), cert. denied, 127 S. Ct. 1021 (2007).

11