# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  v.                                             Case No. 08-CR-189

**KENNETH LUEDTKE**
       **Defendant.**

## SENTENCING MEMORANDUM

Defendant Kenneth Luedtke pleaded guilty to unlawful possession of firearms while subject to a domestic abuse injunction, contrary to 18 U.S.C. § 922(g)(8), and I ordered a pre-sentence report ("PSR") and set the case for sentencing. In imposing sentence, I first calculate the advisory guideline range, then determine an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See Gall v. United States, 128 S. Ct. 586, 596 (2007); United States v. Samuels, 521 F.3d 804, 815 (7th Cir. 2008).

## I. GUIDELINES

Defendant's PSR set a base offense of 14 under U.S.S.G. § 2K2.1(a)(6), imposed a 2-level increase because defendant possessed four firearms, see § 2K2.1(b)(1)(A), then granted a 3-level decrease for acceptance of responsibility based on defendant's timely guilty plea, see § 3E1.1, for a final level of 13. The PSR further calculated a criminal history category of I, which in combination with the offense level of 13 produced an imprisonment range of 12-18 months. Neither side objected to these calculations, which I adopted.

## II. SECTION 3553(a)

**A.    Sentencing Factors**

Section 3553(a) directs the sentencing court to consider:

(1)    the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). In determining a sufficient sentence, the district court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place "any thumb on the scale" favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination, taking

into account the types of sentences available, the other relevant § 3553(a) factors and the arguments of the parties. See United States v. Wilms, 495 F.3d 277, 282 (6th Cir. 2007).

**B.      Analysis**

  **1.      The Offense**

On February 24, 2008, defendant's girlfriend, Maria Stock, reported to the police that defendant hit her on the arm with a rifle, pointed the rifle at her and threatened to kill her. Defendant eventually unloaded the rifle and put it back in a gun cabinet. Ms. Stock indicated that defendant had several rifles and shotguns in the house. One of the officers noticed a bruise on Stock's arm.

Officers responded to defendant's residence and saw him come to a window, turn the lights off and on, holding what they believed to be a firearm. When he later exited the house, officers placed him into custody without incident. The officers then obtained a search warrant for the house and seized four long guns. A check with Wisconsin's Department of Natural Resources revealed that defendant had recently been deer hunting, and a downstairs tenant reported seeing guns in the residence. Based on an injunction obtained by an ex-girlfriend in July 2006, defendant was prohibited from possessing guns until July 2010. Defendant stated that he possessed the guns for hunting purposes but admitted knowing that he was barred from any firearm possession by the injunction.

  **2.      The Defendant**

Defendant was thirty-one years old, and his only prior record consisted of a 2002 drunk driving conviction. State authorities charged him with various offenses arising out of his altercation with Ms. Stock but agreed to dismiss those charges after his plea in this case. He

3

also had an expunged battery case from 1997.

Defendant clearly had a drinking problem, as he conceded. He was apparently drunk during the incident with his girlfriend on this occasion, he admitted drinking to excess regularly before this, and he had the prior drunk driving conviction. He also appeared to have an anger problem, which had manifested itself with two girlfriends. He further reported a history of depression and other mental health issues, for which he had received treatment, as described in the PSR. (PSR ¶¶ 56-59.) These issues required further evaluation and treatment, which I sought to provide in the sentence.

The record also contained many positives regarding defendant's character and background. He stopped drinking after this incident occurred, about one year prior to sentencing, which was confirmed by his negative screens on pre-trial release. He seemed invested in the treatment program he commenced at Oshkosh Counseling Center. His counselor wrote that he was "engaged, sincere and honest" during their sessions, attended all appointments and seemed eager to talk. He made "no excuses for his actions but accepted responsibility for them and worked to find better ways to communicate and handle stressful situations." The counselor further indicated that they had explored substance abuse issues, and she stated that he had remained sober. She believed that he was "serious about changing his life for the better." (Alicia Werch Letter of Jan. 16, 2009.) Defendant also received medication for depression and anxiety from his family doctor. (PSR ¶ 57.)

Defendant compiled an excellent employment record, as set forth in ¶¶ 66-68 of the PSR, working for Oshkosh Truck for the past 2 ½ years. A co-worker, the union vice-president, wrote that defendant was an asset to the company and took great pride in his job. Defendant's supervisor likewise wrote that defendant was a very hard worker and accepted volunteer

4

positions as needed. Defendant owned his own home, a further indication of some social stability.

Defendant's mother made positive statements about him to the PSR writer and in a letter to the court, indicating that he was helpful and personable. I found particularly noteworthy the care defendant provided for his step-father when the elder man was dying of cancer, as described in the letter, which showed maturity and a commitment to others. Defendant moved in his with his step-father during his last days and provided for all of his needs. I received letters from other friends and family members attesting to defendant's positive personal characteristics and helpful nature. The letters certainly painted a different picture of defendant than the one suggested by the offense conduct here. Sobriety seemed to be the key between these two different sides of the defendant.

### 3. The Guidelines and Purposes of Sentencing

The guidelines called for a term of 12-18 months in prison, but the parties both believed, with some variation in the specifics, that a sentence served in the community would be appropriate.[1] I agreed.

Although the offense was serious, it was clear that defendant's conduct in this instance was fueled by alcohol and, at the time, unaddressed anger and mental health issues. His record showed that when sober he did not pose a threat. His good conduct over the past year demonstrated as much. But for the drunken threat Stock reported defendant made with one of the guns, he may have qualified for a guideline reduction to level 6 under U.S.S.G. §

---

[1]The government suggested probation with a condition of 6-12 months in a community correctional center ("CCC"), while the defense asked for probation with home confinement.

5

2K2.1(b)(2),[2] a level producing a probation range.

I concluded that, in the long run, a lengthy period of probation with strict counseling and other conditions – and some community confinement – would best serve all of the purposes of sentencing. Under 18 U.S.C. § 3561(c)(1), I could place defendant on probation for up to 5 years, while supervised release for this type of offense is limited to 3 years under 18 U.S.C. § 3583(b)(2). I could also impose a much longer sentence if defendant violated any of his conditions. On revocation of probation, the court can impose any sentence originally available, see 18 U.S.C. § 3565(a), here up to 10 years, while a supervised release revocation sentence is limited to 2 years for C felonies such as this, see 18 U.S.C. § 3583(e)(3).

I found a period of community confinement, along with a fine, sufficient to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A). If he could remain sober and address his treatment needs, I found that defendant did not present a threat to the public or a risk of re-offending. See 18 U.S.C. §§ 3553(a)(2)(B) & (C). Finally, I found that his treatment needs were best met in the community. See 18 U.S.C. § 3553(a)(2)(D). This sentence allowed defendant to keep his job, which also seemed in everyone's best interest.

### III. CONCLUSION

Therefore, I placed defendant on probation for a period of 5 years, with a condition of 6 months community confinement, which I split into 3 months in a Community Correctional Center ("CCC") and 3 months of home confinement on electronic monitoring. I selected the

---

[2] That guideline provides: "If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6." The government did not seek an enhancement pursuant to U.S.S.G. § 2K2.1(b)(6).

6

maximum probationary term to ensure that defendant was monitored and continued to address his treatment needs. Under all the circumstances, I found this sentence sufficient but not greater than necessary. This sentence varied modestly from the guidelines, and because it was supported by the particular facts of the case it created no unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

Based on his financial situation, I found that defendant could pay a fine at the low end of the guideline range, over time. I therefore imposed a fine of $3000, payable at a rate of not less than $100 per month and as a condition of probation. As further conditions of probation, in addition to the community confinement terms set forth above, I ordered defendant to participate in a program of testing and residential or outpatient treatment for drug and alcohol abuse; to avoid taverns or other establishments where alcohol was the principal item of sale; to provide access to all financial information requested by the supervising probation officer; and to participate in a mental health treatment program, including an approved program for domestic violence as directed by the supervising probation officer. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 27th day of February, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

7

Case 2:08-cr-00189-LA    Filed 02/28/09    Page 7 of 7    Document 38